**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

SANDRA N.,                                    )
                                              )
        Plaintiff,                            )
                                              )
    v.                                        )        Case No. 4:24-CV-1266-JSD
                                              )
FRANK BISIGNANO,                              )
COMMISSIONER OF SOCIAL SECURITY,              )
                                              )
        Defendant.[1]                         )
                                              )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Sandra N. ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Plaintiff's claim for DIB and SSI.

### I.    Background

Plaintiff's daughter, Amy F., filed claims for disability benefits under the Social Security Act on or around October 7, 2019. Amy F.'s claims were denied initially and upon reconsideration, and Amy F. requested a hearing before an Administrative Law Judge (ALJ). (Tr. 126-30, 136-40, 148-55, 164-168) While awaiting the hearing, Amy F. passed away on February 9, 2022 and her mother, Sandra N. was substituted as Plaintiff. (Tr. 17, 223, 981) Sandra N. requested to proceed with the hearing and testified on June 21, 2023. (Tr. 17, 42-72, 255) The ALJ issued an unfavorable decision on August 15, 2023. (Tr. 14-36) The Appeals

---

[1] Frank Bisignano is now the Acting Commissioner of Social Security.  He is automatically substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).

Council denied Plaintiff's Request for Review of Hearing Decision/Order. (Tr. 8-13) *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  On July 18, 2024, the Appeals Council set aside its previous action to consider additional information and again denied the Request for Review. (Tr. 1-7) The decision of the ALJ thus is the final decision of the Commissioner.

The ALJ found that Amy F. met the insured status requirements of the Social Security Act through December 31, 2021 and did not engage in substantial gainful activity after August 31, 2016, the alleged onset date. (Tr. 19) The ALJ found that Amy F. had the following severe impairments: bipolar disorder; generalized anxiety disorder; and traumatic brain injury. (Tr. 20). The ALJ further found that Amy F. had the following non-severe impairments: degenerative disc disease of the cervical spine and degenerative joint disease of the right knee. (Tr. 20) The ALJ considered the opinion of consultative examiner Chrysanthy Tsifutis, M.D. but found it not to be persuasive. (Tr. 20)

The ALJ found that Amy F. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 20) The ALJ specifically evaluated the "paragraph B" criteria so whether claimant's mental impairments resulted in one extreme limitation or two marked limitations in broad area of functioning. (Tr. 21) The ALJ found that "[i]n understanding, remembering, or applying information, the claimant had a moderate limitation"; "[i]In interacting with others, the claimant had a mild limitation"; "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation"; and "[a]s for adapting or managing oneself, the claimant had experienced a moderate limitation. (Tr. 21-22)  Ultimately, "[b]ecause the claimant's mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation," the ALJ

found that the "paragraph B" criteria were not satisfied. (Tr. 22) The ALJ also considered whether the "paragraph C" criteria were satisfied but found that the record did not establish that the claimant had only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that were not already part of the claimant's daily life. (Tr. 22)

Finally, the ALJ found that Amy F. "had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations." (Tr. 22) The ALJ limited Amy F. to simple routine tasks. "Her work would have been in a low stress job defined as having only occasional changes in the work setting. She could not have performed work that required hourly quotas." (Tr. 22)

The ALJ found that Amy F. was unable to perform any past relevant work. (Tr. 27) However, considering her age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Amy F. could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 27) Consequently, the ALJ discerned that Amy F. was not under a disability from August 31, 2016 through the date of her death (20 CFR 404.1520(g) and 416.920(g)). (Tr. 28-29)

Plaintiff filed this Complaint on September 17, 2024. (ECF No. 1)  On December 4, 2024, Plaintiff filed a Brief in Support of Plaintiff's Complaint. (ECF No. 11) The Commissioner filed a Brief in Support of the Commissioner's Decision on December 20, 2024. (ECF No. 15) Plaintiff filed a Reply Brief on January 17, 2025. (ECF No. 18)

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

## II.    Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the

analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion

### A.    Medical Opinion Evidence

In a May 2020 psychiatric assessment, Anthony J. Castro, Psy.D noted that Amy F.'s short and long-term memory were both intact and within normal limits, and her follow-up appointments between May and August 2020 likewise did not mention any impairment to her memory. (Tr. 25, 786, 788-91) In an August 2020 letter, Dr. Castro stated, "It was clear immediately from our first session that [Amy F.] suffers from profound short term memory loss" and [i]t is clear to me that [Amy F.'s] severe loss of short term memory, due to the [1996 motor vehicle] accident, currently make it extremely difficult for [Amy F.] to be employed." (Tr. 25, 783) Later, Dr. Castro provided a medical source statement dated March 6, 2022. (Tr. 976-980) Dr. Castro stated that he treated Amy F. from May 20, 2020 to August 5, 2020, for 5 visits. Dr. Castro diagnosed Amy F. with Adjustment Personality Disorder, Mixed Anxiety and Depression. He marked on the form that Amy F. was extremely limited in her ability to remember locations and work-like procedures and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. (Tr. 978) Likewise, he marked that Amy F. was severely limited in her ability to understand, remember, apply information, concentrate, persist, or maintain pace. (Tr. 979) He expected that Amy F. would be off task 25% or more each

workday and be absent about three days per month. (Tr. 980) Dr. Castro, however, did not provide any explanation on the March 2022 checkbox form and left the "remarks" portion of the form blank. (Tr. 976-80)

Plaintiff claims that Dr. Castro's opinions support a finding that Amy F. suffered from "very significant memory issues as well as depressed and frustrated mood." (ECF No. 11 at 4 (citing Tr. 349-51)) Plaintiff asserts that Dr. Castro's May 2020 finding that Plaintiff's short and long-term memory were intact "cannot be seriously taken as anything other than an oversight by the doctor in preparing this note." (ECF No. 11 at 4) Further, Plaintiff disagrees with the ALJ's conclusory statement that the limitations identified by Dr. Castro "are not consistent with his examinations nor are they supported with any explanation." (ECF No. 11 at 5 (citing Tr. 28)) Plaintiff argues that the ALJ's conclusion does not evaluate the consistency and supportability of Dr. Castro's opinion in violation of 20 C.F.R. §404.1527. (ECF No. 11 at 5)

Similarly, Plaintiff contends that other treating records support a finding that Amy F. suffered memory loss due to her car accident. ARCA (Assisted Recovery Center of America) records indicate that Amy F. had depressed mood, guarded attitude and affect, impaired judgment, circumstantial thought, limited insight, and poor eye contact. (Tr. 751, 759, 766-67, 776-77, 888) Plaintiff claims that the report of consultative examiner, Dr. Chrysanthy Tsifutis, M.D., also supports the treating source opinion. Dr. Tsifutis noted that Amy F. had memory issues that prevented her from holding a job, she relied on Alexa to schedule reminders, she rambled during her interview and had short term memory difficulties. (Tr. 357-60)

Plaintiff further complains that the ALJ did not address the Neuropsychological Examination by Dr. Michael Oliveri, Ph.D., who examined Amy F. shortly after she sustained her traumatic brain injury at age 18. (Tr. 437-38) Dr. Oliveri diagnosed Amy F. with

"[m]oderately severe residual neurocognitive abnormality at present indicative of compromise to systems mediating new-learning, memory, and executive functions as well as some diminished self-regulatory functions. Relative to premorbid estimates, moderately severe neurocognitive dysfunction specifically including the following: . . . 2. Multi-modal short-term memory compromise, moderately severe." (Tr. 438) Although this examination occurred in 1996, Plaintiff claims that the remoteness in time does not relieve the ALJ from considering Dr. Oliveri's opinion, particularly given that he is a specialist. (ECF No. 11 at 6) In addition, Plaintiff asserts that evidence adduced shows that Amy F. continued to suffer from mental deficits. Plaintiff notes that, with only two exceptions, Amy F. maintained employment with all her employers for less than a calendar year. (Tr. 313-18) Plaintiff acknowledges that Amy F. was employed by Missouri Baptist Medical Center from 2005 to 2010 but her sister testified that she was "granted a lot of grace" because her stepmother worked there. (Tr. 63)

Plaintiff finally notes that the ALJ declined to schedule a consultative examination in Amy F.'s case, despite that she had not had a neuropsychological evaluation since Dr. Oliveri's 1996 report. (Tr. 415-16) As a result, Plaintiff claims that the ALJ's failure to acknowledge Dr. Oliveri's report and his decision constitutes reversible error that requires remand. (ECF No. 11 at 7-8)

The Court holds that ALJ's decision to find Dr. Castro's August 2020 opinion unpersuasive under the applicable regulations is supported in the record. (Tr. 25); *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."). The ALJ observed that, as party of a May 2020 psychiatric assessment, Dr.

Castro mentioned that Plaintiff's short and long-term memory were both intact and within normal limits and no follow-up appointments between May and August 2020 identified any impairment to Plaintiff's memory. (Tr. 25, 786, 788-791) The ALJ thus found that Dr. Castro's August opinion was inconsistent with and not supported by any of his own examinations. (Tr. 25) The Court bears in mind that it is not its "role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in [the] determination of plaintiff's RFC." *Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (citing *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016)). Rather, it is the ALJ's duty to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). The ALJ's determination that Dr. Castro's May 2020 finding is substantially supported in the record by his examination notes and, consequently, cannot be construed as a mistake. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (substantial evidence supported the ALJ's denial of benefits where the limitations the physician "expressed in his evaluation are not reflected in any treatment notes or medical records"). Likewise, the ALJ finds that Dr. Castro's August 2020 opinion was inconsistent with other mental status examinations (particularly from May 2020 through August 2020) when the examinations indicated that Amy F.'s memory was intact. (Tr. 25) (Tr. 21, 25 (citing 743, 751, 759, 767, 776-77, 842, 850, 858, 865, 880, 896, 904, 912, 90, 928, 936, 944, 951-52, 957-58))

The ALJ also found unpersuasive Dr. Castro's March 2022 opinion that Amy F. had several marked to extreme mental limitations, would be off task 25% or more of the time, and would miss three days of work per month. (Tr. 27, 979-80) The ALJ remarked that the limitations included in Dr. Castro's March 2022 opinion were inconsistent with his examinations and not supported with explanation; that is, Dr. Castro did not provide any explanation on the

March 2022 checkbox form, leaving blank the "remarks" portion of the form. (Tr. 976-80) Further, although Plaintiff postulates that Dr. Castro's August 2020 letter supports his March 2022 opinion, Dr. Castro never indicated that the two opinions were related. Indeed, the ALJ identified that Dr. Castro had five sessions with Amy F. in 2020 where she demonstrated an anxious/depressed mood but that she had normal thought processes, no psychomotor agitation, and no suicidal or homicidal ideation. (Tr. 27, 785-86, 788-91). Thus, although Plaintiff asserted that Dr. Castro's records demonstrated that Amy F. had "very significant memory issues" (ECF No. 11 at 4), his May 2020 examination and his other 2020 sessions with her suggested that her memory was within normal limits.

Further, although Plaintiff claims that other records support Dr. Castro's opinion, the ALJ clearly weighed these records and found them unpersuasive and insufficient to alter his determination. (Tr. 20); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("Evidence that both supports and detracts from the ALJ's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("Even if we would have weighed the evidence differently, we must affirm the denial of benefits if there is enough evidence to support the other side."). As stated, the Court finds that there was substantial evidence supporting the ALJ's determination that Amy F's memory problems were not disabling, in contrast to Dr. Castro's opinion. The ALJ's decision was supported by numerous provider findings that her memory was intact (Tr. 21, 25-26, 743, 751, 759, 767, 776-77, 842, 850, 858, 865, 880, 888m 896, 904, 912, 920, 928, 936, 944, 951-52, 957-58) and that her attention and concentration generally were intact (Tr. 21, 748, 756, 764, 840, 848, 855, 862, 870, 877, 885, 893, 901, 910, 918, 925). Importantly, Amy F's mental health examinations from her

imprisonment (November 30, 2018 through April 6, 2000) were consistently normal, subject to some expected sadness at the beginning of her incarceration. (Tr. 24, 461-62, 473-76, 483-84, 488, 496-97, 502-03, 509-10, 525-26, 544-45, 563-64, 578-79, 588-89, 612-13, 643-44, 657-58, 666-67, 672-73, 693-95). Amy F.'s mood improved when she took prescribed medications. (Tr. 24, 446, 448, 522, 588-89) Notably, the ALJ contemplated Amy F.'s incarceration records from a March 23, 2020 encounter that revealed a normal mental status exam as she presented with a normal appearance, was minimally anxious, thought content was normal, insight and judgment were fair, speech was normal, mood and affect were euthymic and noted as improved, and no deficits in cognition. (Tr. 445-46) Thereafter, on June 19, 2020, Amy F., then released from incarceration, presented for an appointment with ARCA and was found to be kempt, calm, cooperative, friendly and open, alert, orientated times four, possessing normal speech patterns and logical thought process, no suicidal or homicidal ideation, euthymic affect, good insight and judgment, and intact memory. (Tr. 743-45) Tellingly, during a July 25, 2020 appointment with ARCA, Amy F. denied using meth, despite testing positive for the opiate and reported a depressed and anxious mood, as well as a defensive attitude and congruent but guarded affect. (Tr. 756-59) Nevertheless, Amy F. had intact memory and was alert, with normal speech. (Tr. 759) At a September 3, 2020 encounter through ARCA, Amy F. reported a logical thought process and stable mood. (Tr. 802-04) The ALJ referenced these and other encounters from September 2020 through July 2021, when Amy F. showed an improved and euthymic mood, logical thought content, no suicidal or homicidal ideation, and a good appetite. (Tr. 25, 808, 818, 820, 823, 828, 870) These reports controvert Dr. Castro's findings that Amy F. had marked to extreme mental limitations.

10

The Court also notes that the ALJ considered the consultative examination of Dr. Chrysanthy Tsifutis, M.D. but found it unpersuasive. (Tr. 20) Plaintiff relies on Dr. Tsifutis's isolated note that Amy F. could recall only 1 of 3 items after 5 minutes, but other records from Dr. Tsifutis are more inline with the records previously discussed where Amy F. had a consistently intact memory. (Tr. 795). Indeed, Dr. Tsifutis wrote that Amy F. had no cognitive function limitation, was fully orientated, could perform simple math, and had good insight and fund of knowledge. (Tr. 795-96) Thus, the Court finds that Dr. Tsifutis's examination and the substantial portion of the records portray a mental limitation consistent with the ALJ's mental RFC determination. (Tr. 22)

Finally, the Court finds that the ALJ's failure to discuss the 1996 neuropsychological examination from Dr. Oliveri (Tr. 437-38) does not constitute reversible error. Amy F. alleged her disability began August 31, 2016, so the ALJ was not required to discuss a medical record from two decades prior. *See Friar v. Comm'r of Soc. Sec. Admin.,* No. 3:20-CV-00404-ERE, 2021 WL 4812975, at *3 (E.D. Ark. Oct. 15, 2021) (medical opinion from years before the relevant time period was not informative); *Zeller v. Barnhart*, 384 F.3d 934, 936 (8th Cir. 2004) (an opinion that does not pertain to the claimant's condition during the relevant time-period does not bear much weight). The Court will "uph[o]ld an ALJ's decision to discount or even disregard the opinion of a treating physician (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wagner v. Astrue,* 499 F.3d 842, 849 (8th Cir.2007); *see also Juszczyk v. Astrue,* 542 F.3d 626, 632 (8th Cir.2008); *Bannister v. Astrue*, 730 F. Supp. 2d 946, 953 (S.D. Iowa 2010). Here, the Court finds the previously discussed medical records from the relevant period support the ALJ's determination that Amy F.

was not disabled such that discussion of Dr. Oliveri's dated and immaterial report was unnecessary.

### B.    Lay Witness Testimony

Plaintiff contends that the ALJ did not properly evaluate the lay witness testimony provided at the hearing by Amy F.'s sister Dawn. (ECF No. 11 at 8) Dawn testified that Amy would need reminders from Alexa for all her household tasks. (Tr. 61-63) Dawn noted that, even with reminders, Amy F. frequently would forget to pick up her son from school or would go to the wrong doctor appointment. *Id*. Moreover, Amy F. tried to deliver pizzas but she would get lost and forget that she could use GPS. *Id*. Plaintiff asserts that the lay witness testimony of Dawn should have been considered and the failure to do so constitutes reversible error. (ECF No. 11 at 9) In her reply, Plaintiff further notes that Amy F.'s mother testified only briefly at the hearing (Tr. 72-76) and Dawn provided the only testimony at the hearing regarding Amy F.'s memory issues. (ECF No. 18 at 3) Therefore, Plaintiff claims that the ALJ failed to evaluate all the evidence when he failed to consider the testimony of Amy F.'s sister Dawn.

"Once the diagnosis is established, but the severity of the degenerative condition during the relevant period is unanswered, the claimant may fill the evidentiary gap with lay testimony." *Grebenick v. Chater*, 121 F.3d 1193, 1199 (8th Cir. 1997) (citing *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984)). "The ALJ must consider this evidence, even if it is uncorroborated by objective medical evidence. Under this standard, the ALJ's credibility determination of the lay witnesses becomes critical, because the ALJ is, of course, free to believe or disbelieve any or all of the lay witnesses." *Id.* "But an ALJ properly may give less than controlling weight to lay-witness statements that are inconsistent with the record." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *Schmitt v. Kijakazi,* 27 F.4th 1353, 1361 (8th Cir. 2022).

The Court finds that the ALJ adequately considered information regarding Amy F.'s limitations in the decision. The ALJ considered the testimony of Dawn that Amy F. had short-term memory loss and struggled with organizing, planning, and shifting from one task to another and that Amy F. would need to set reminders for certain tasks and would sometimes forget to pick up her son. (Tr. 23) The ALJ noted that that Amy F.'s statements were inconsistent with the her reported daily activities and psychologists' observations that she was capable of normal, organized thought processes. (Tr. 23-24) Amy F. had detailed in her functional report that she struggled with remembering and focusing on job tasks due to her traumatic brain injury and mental impairment. (Tr. 374-81) In her functional report, Amy F. testified that that she could prepare meals, perform chores, drive, shop in stores, interact with others, and manage her finances. (Tr. 23, 376-78)

Although the ALJ did not specifically discount Dawn's testimony, clearly the same basis for discounting Amy F.'s testimony also applies to Dawn's statements regarding Amy F.'s abilities. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (ALJ not required to explicitly reject merely cumulative testimony). Even though Plaintiff claims that Dawn provided the only testimony regarding Amy F.'s memory issues, the ALJ clearly considered Amy F.'s mental deficiencies, as also outlined elsewhere in the record, and accounted for them, to the extent credible, in the RFC. The ALJ's failure to explicitly discredit Dawn's statements is only a deficiency in decision writing and not a grounds for reversal. *See Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008)(concluding that where third-party evidence supporting a claimant's complaints was the same as evidence that the ALJ rejected for reasons specified in the opinion, the court can refuse to remand based on an "arguable deficiency in opinion-writing technique" that had no effect on the outcome of the case). "Because the ALJ is not required to give

substantial weight to [Dawn's] opinion or to give a more detailed explanation for discounting it, the ALJ did not err in his evaluation of [the] opinion." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016). The Court finds no ground for reversal.

### C.  Medically Determinable Impairment

Plaintiff claims that the ALJ erred in failing to consider any physical of Amy F.'s impairments as severe. (ECF No. 11 at 9) Plaintiff asserts that the records demonstrate that Amy F. had a history of severe head trauma and several orthopedic injuries with surgeries. (ECF No. 11 at 9) Plaintiff again notes that consultative examiner Dr. Tsifutis diagnosed Amy F. with a history of traumatic brain injury with memory issues and a history of degenerative disc disease of the cervical spine with neck pain. (Tr. 792) Plaintiff argues that the ALJ "improperly substituted his medical judgment for that of the CE [consultative examiner] based upon the findings of the CE's own examination." (ECF No. 11 at 11) Instead, Plaintiff contends that Amy F.'s established physical difficulties in the record are consistent with a severe impairment and the ALJ's contrary findings are not supported by substantial evidence and the ALJ's failure to classify a medically determinable impairment as "severe" constitutes an error of law. (ECF No. 11 at 11)

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007) "The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) (citing *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir.

2007)). In determining whether evidence is substantial, this Court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis*, 477 F.3d at 1040 (citing *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000)). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this Regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors: supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). "The first two factors—supportability and consistency—are the most important." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *accord Austin*, 52 F.4th at 723; *see* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Violet G. v. Kijakazi*, No. 21-CV-2105 (TNL), 2023 WL 2696594, at *5 (D. Minn. Mar. 29, 2023). "These regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion." *Bement v. Kijakazi*, No. CV 23-3010, 2023 WL 8720686, at *2 (W.D. Ark. Dec. 18, 2023).

Here, the Court finds that the ALJ's opinion was supported by and consistent with the record. Initially, contrary to Plaintiff's claim (ECF No. 11 at 9-10), the ALJ found Amy F.'s traumatic brain injury to be severe. (Tr. 20) With her other impairments, the ALJ discussed Amy

F.'s alleged symptoms and limitations and compared them with the relevant medical evidence. The ALJ discerned no indication of functional problems due to Amy F.'s degenerative disc disease of the cervical spine and degenerative joint disease of the right knee. (Tr. 20) The ALJ specifically cited the December 2020 consultative examination with Dr. Tsifutis, which indicated only a slight decrease in lateral flexion of the cervical spine and some decreased range of motion with straight leg raise testing, but no tenderness from the cervical spine down, and straight leg testing was negative bilaterally. (Tr. 20, 795, 797-98) Further, all of Amy F.'s joints were stable and nontender and she had full range of motion of both knees. *Id.* Amy F.'s gait was normal without an assistive device. *Id.* She could walk on her heels and toes without difficulty. Her tandem walk was normal. *Id.* Her Romberg test was negative. *Id.* She could hop on each foot and perform a full squat. *Id.* Her stance was normal, she did not need help getting off and on the examination table, and she was able to rise from a chair without difficulty. *Id.* She had 5/5 strength in her upper and lower extremities. *Id.* The Court finds that the ALJ adequately supported his determination that Amy F.'s degenerative disc disease of the cervical spine and degenerative joint disease of the right knee were non-severe. (Tr. 20)

The ALJ, however, rejected Dr. Tsifutis's opinion that Amy F. could occasionally move her head and frequently use controls to drive and use machinery because it was inconsistent with her examination finding that she had only minimally decreased range of motion in her cervical spine and mild discomfort in the left trapezius without spasm, swelling, redness, warmth, or deformity. (Tr. 20, 795-98) Although Plaintiff argues that "the ALJ should not be permitted to reject the opinion of a CE with the CE's own medical examination" (ECF No. 11 at 11), the Court finds that the ALJ, as a fact-finder, fulfilled his duty to weigh the medical evidence. *See*

*Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (citing *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001) ("The ALJ had a duty to evaluate the medical evidence as a whole.").

Finally, although Plaintiff cites instances on January 9, 20219 and October 8, 2019, when Amy F. sought treatment for lower leg and ankle pain (ECF No. 11 at 10), the Court finds that these two discrete instances do not negate the determination that the ALJ's decision is supported by substantial evidence. The ALJ pointed to several instances when Amy F. had a steady and normal gait (Tr. 622, 641, 663, 677, 689, 703), which supports a contrary conclusion. *See Grable v. Colvin,* 770 F.3d 1196, 1201 (8th Cir. 2014) ("We may not reverse simply because we would have decided differently or because substantial evidence supports a contrary outcome."); *Nowling v. Colvin*, 813 F.3d 1110, 1119–20 (8th Cir. 2016) (same).

### D. RFC

As stated, the ALJ fashioned an RFC for Amy F., finding that she could perform a full range of work at all exertional levels, except that the was limited to simple, routine tasks; work in a low stress job, which is defined as having only occasional changes in a work setting; and could not perform work that requires hourly quotas. (Tr. 22) Plaintiff maintains that the ALJ failed to consider whether Amy F. could perform the activities identified by the prior RFC on a regular and continuous basis. (ECF No. 11 at 11-2) Plaintiff contends that the ALJ's RFC does not comport with SSR16-3p because the ALJ did not properly evaluate the description of Amy F.'s symptoms, including being off-task or wholly absent from work for an impermissible amount of time. (ECF No. 11 at 12) In sum, Plaintiff argues that the ALJ's failure to evaluate Amy F.'s case under SSR16-3p constitutes reversible error because the prior decision contains an RFC consisting of activities that Amy F. would be unable to sustain on a regular and continuous basis without being interrupted by her symptoms. (ECF No. 11 at 13)

17

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.2004) (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir.2004)); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir.2004); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition)).

The Court holds that the RFC adequately and appropriately accounted for Amy F.'s limitations. Low stress work and no hourly quotas were justified based upon Amy F.'s records showing that her symptoms worsened with her domestic stressors. (Tr. 22, 26) The ALJ limited her to simple and routine tasks based upon Amy F.'s claims of memory issues. (Tr. 22, 26) Finally, the ALJ limited Amy F. to occasional changes in work settings based upon her limited insight and judgment and her difficulty adjusting to changes. (Tr. 22, 26) Plaintiff, who bears the burden of proving her RFC, has not proven additional limitations. *See Eichelberger*, 390 F.3d at 591.

The Court finds that the ALJ fashioned the RFC to address Amy F.'s subjective complaints to the extent that they were supported in the record. The ALJ relied upon Amy F.'s mental status examinations, which were primarily normal and reflected an intact memory. (Tr. 24-26) In addition, Amy F.'s symptoms improved with treatment, indicating that impairments were not disabling. For example, in July 2019, Amy F. obtained some relief from her anxiety symptoms with the medication Buspar. (Tr. 24, 522) Similarly, she was  instructed in 2020 to "[c]ontinue with medications"—Lexapro, Buspar, and Ability—because she was "showing

18

improvement on the current regimen." (Tr. 448) *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)("Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints.") Finally, the ALJ considered Amy F.'s activities of daily living, including her June 2020 report, that she was independent in her activities, which undermine her subjective claims of disability. (Tr. 25, 744); *see also* Tr. 23, 376-78 (Amy F. could prepare meals, perform household chores, drive alone, shop in stores, interact with others, and manager her finances). In conclusion, the factors did not support a greater limitation and the RFC was supported by substantial evidence.

### E.  Independent Consultive Examination

Plaintiff contends that the ALJ erred by failing to order a mental CE, despite Amy F.'s timely request for a CE on December 23, 2021. (Tr. 415-16)[2] The request for a CE summarized the results of Amy F.'s neuropsychological evaluation by Dr. Oliveri in 1996 (Tr. 437-38) and statements by Dr. Castro that Amy F. suffered from profound short term memory loss. (Tr. 416). Plaintiff asserts that there was no basis for denying the request for a CE in order to develop Amy F.'s full and complete medical history and this deficiency requires a remand for further consideration. (ECF No. 11 at 15)

An ALJ has a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994); *Wilson v. Saul*, No. 4:18-CV-757-JM-BD, 2019 WL 6339890, at *3 (E.D. Ark. Nov. 7, 2019), *report and recommendation adopted*, No. 4:18-CV-00757 JM/BD, 2019 WL 6334674 (E.D. Ark. Nov. 26, 2019). "The ALJ is obligated to re-contact a treating or consulting physician or to order further testing only if the medical records

---

[2] Plaintiff notes that the request was made five weeks prior to the first hearing date of February 1, 2022 (Tr. 187-211) and more than a year prior to Amy F.'s death and the second hearing date of June 21, 2023 (Tr. 225-248).

presented do not provide sufficient evidence to make a decision on disability." *Wilson*, 2019 WL 6339890, at *3 (citing *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011)). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Id.* (citing *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)).

The Court finds that the ALJ did not err by failing to order a consultative examination regarding Amy F.'s alleged memory loss. The Court reiterates its finding that the ALJ reasonably considered and relied upon examinations that found that Amy F.'s memory was intact and found that the Dr. Castro's August 2020 report was unpersuasive. (Tr. 25-26, 743, 751, 759, 767, 776-77, 842, 850, 858, 865, 880, 896, 904, 912, 90, 928, 936, 944, 951-52, 957-58) The ALJ also noted Amy F.'s normal mental status examination findings and that her symptoms improved when she was compliant with her medication. (Tr. 24-26) In any event, the ALJ limited Amy F. to simple and routine tasks to accommodate for her claims of memory loss. (Tr. 22, 26) Likewise, the ALJ restricted Amy F. to low stress work with no hourly quotas based upon evidence in the record that her symptoms worsened with domestic stressors. (Tr. 22, 26) Finally, the ALJ confined Amy F. to only occasional changes in the work setting based upon her difficulty adjusting to change. (Tr. 22, 26) The ALJ discerned that another CE was unnecessary based upon the lack of evidence to support her claims of memory loss, coupled with the liberal RFC accommodations for her purported mental issues. Thus, the Court finds substantial evidence to support the ALJ's finding both that Amy F.'s limitations were not severe and that any limitations were fully and appropriately accommodated for in the RFC. As a result, the Court defers to the ALJ's determination that a consultative examination was not necessary.

## IV.        Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Frank Bisignano, Commissioner of Social Security, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of July, 2025.